**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KATHLEEN J MILLER,

          CASE NO. 17-cv-12699
   *Plaintiff*,      DISTRICT JUDGE GERSHWIN A. DRAIN
*v.*           MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

   *Defendant.*
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS**
**MOTIONS FOR SUMMARY JUDGMENT (Docs. 10, 11)**

**I.**  **RECOMMENDATION**

  In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (Doc. 10), be **DENIED**, that the Commissioner's Motion, (Doc. 11), be **GRANTED**, and that this case be **AFFIRMED**.

**II.**  **REPORT**

  **A.**  **Introduction and Procedural History**

  Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff Kathleen J. Miller's claim for Disability Insurance Benefits ("DIB").

(Doc. 2). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 10, 11).

On July 25, 2014, Plaintiff filed the instant application for DIB, alleging a disability onset date of December 1, 2012. (Tr. 133-34). The Commissioner denied her claim. (Tr. 55-66). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on February 25, 2016 before ALJ Martha M. Gasparovich. (Tr. 28-54). The ALJ issued a decision on March 11, 2016, finding Plaintiff not disabled. (Tr. 7-27). On June 23, 2017, the Appeals Council denied review, (Tr. 1-6), and Plaintiff filed for judicial review of that final decision on August 17, 2017. (Doc. 1).

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not

"try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.     Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and

meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two (20 C.F.R.

404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D. ALJ Findings

Following the five-step sequential analysis, the ALJ found Plaintiff not disabled under the Act. (Tr. 7-27). At Step One, the ALJ found that Plaintiff would meet the insured-status requirements of the Act through December 31, 2018, and had not engaged in substantial gainful activity since December 1, 2012, her alleged onset date. (Tr. 12). At Step Two, the ALJ concluded that the following impairments qualified as severe: degenerative disc disease, lumbar facet spondylosis, lumbar radiculitis, asthma, and allergic rhinitis. (Tr. 12-15). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (Tr. 15-16). Thereafter, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except

> she is unable to stand/walk more than six hours in an eight-hour workday; however, sitting is unlimited, but she requires a sit/stand option at least every thirty to forty-five minutes. The claimant could lift no more than twenty pounds occasionally and ten pounds frequently. She may occasionally stoop, squat, climb, balance, crouch, crawl or kneel. The claimant requires a clean air environment free from concentrated levels of dust, fumes, chemicals, gases and other air borne irritants.

(Tr. 16). At Step Four, the ALJ found Plaintiff incapable of performing her past relevant work and concluded her analysis. (Tr. 20-22).

5

### E.   Administrative Record

#### 1.   Medical Evidence

The Court has reviewed Plaintiff's medical records. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.   Administrative Hearing

##### i.   Function Report

Plaintiff filled out a Function Report, dated August 27, 2014, which appears in the administrative record. (Tr. 183-90). She described her condition as "difficulty hearing people in meetings and at times one-on-one. My ability to utilize the computer to complete reports. Extremely difficulty to travel due to back pain. Difficulty to focus due to medications, tinnitus, sleep disturbance. Tired most of the time." (Tr. 183). She spent her days watching television—with the aid of headphones and closed captions—and when necessary, she would go to the library, store, or doctor's office. (Tr. 184). She could not sleep without medication, and she took care when dressing or bathing to avoid falling. (*Id.*). She continued to prepare meals, and would "heat soup" or "bake casserole," although her husband would complete tasks like "cut[ting] vegetables, etc." (Tr. 185). She could iron and do laundry "with pain," and thus she did these things "as seldom as possible." "Husband cleans, cuts vegetables for dinner, does more of the laundry." (*Id.*). She went outside "whenever needed" by driving or riding in a car. (Tr. 186). She shopped in stores for food and vitamins "once per week," though she used "cart[s] to lean on." (*Id.*). She remained able to pay bills, count change, handle a savings account, and use a

checkbook/money orders. (*Id.*). Her hobbies included watching television, reading, meeting with friends, and walking. (Tr. 187). However, "I stopped going to the movies due to hearing loss, no longer take walks or use treadmill, no longer meet [with] friends in restaurants." (*Id.*). She visited with friends "once every week or two." (*Id.*).

Prompted to point out abilities with which she struggled, Plaintiff marked: lifting, squatting, bending, walking, hearing, stair climbing, concentration, understanding, and using her hands. (Tr. 188). "I have pain when walking, bending, [and] I am unsteady on my feet so I avoid stairs. I have a hard time hearing voices and often have to ask people to repeat themselves or ignor[e] what they have said." (*Id.*). She could only follow spoken instructions "if the person is looking at me, raises their voice level and speaks slowly. (*Id.*). She used glasses and a brace, and since 2009, she had worn hearing aids. (Tr. 189). Symptoms from her medication included, dizziness, tiredness, lightheadedness, and an increase in her tinnitus. (Tr. 190). And in her closing statement, she summarized the above information as follows:

> When I flew for my job I often had extreme problems hearing people. I was often so exhausted from work I spent many nights and weekends resting or sick. The tinnitus is constant, often loud, and I often feel exhausted/nervous from the constant roar. . . . I have a hard time hearing people on the phone even when I wear my hearing aids. I have pain/achiness in my hands, back [and] foot. I have to be careful with pain meds because it increase my tinnitus. I cannot sleep without a sound masker, fan and sleep meds.

(*Id.*).

### ii.    Plaintiff's Testimony at the Administrative Hearings

At the hearing, Plaintiff noted she had a Bachelor of Arts degree and a Masters in Social Work. (Tr. 33). In 2002, after finishing her Masters degree, she began working at

Presbyterian Villages of Michigan. (*Id.*). She moved to a job at Life Care Retirement Communities in 2008, and relocated again in 2009 to a job at Catholic Health East, where she stayed until November 2012. (*Id.*). At Presbyterian Village, she served as "Vice President of Marketing and Communications," and at Life Care and Catholic Health she held the title "Vice President of Marketing." (Tr. 33-34). She was "fired" from her last job because "I wasn't a good fit." (Tr. 34). Following her termination, Plaintiff received six months of unemployment payments. (Tr. 35). Elaborating on the circumstances surrounding her termination, Plaintiff noted "I was having difficulty doing my job" due to fatigue, back pain, and tinnitus. (*Id.*). This included difficulty with phone calls, in which "I would just let the conversation go and give it my best guess of what somebody had said." (Tr. 36).

Plaintiff attested to an ability to stand for "[a]bout five minutes" before needing to sit down due to back pain. (Tr. 38). She could walk "[a]bout a block, maybe less," because of the "[s]hooting pain in my back and my legs," an issue that had plagued her since 2003. (*Id.*). In an average day, she watched the news and drank coffee. (Tr. 39). "I sometimes go out to the library or go get something to eat at lunchtime. I'm usually back home in the afternoon because I'm too tired, and then I sit and watch television, maybe read a little bit." (*Id.*). She drove approximately twice a week. (*Id.*). Her husband did most of the cooking and housework. (*Id.*). Her condition interfered with her sleep as well: "I wake up in the middle of the night, and sometimes I can get back to sleep, but then sometimes I'll wake up again, or I just lay on the couch and watch television." (Tr. 40).

Plaintiff then noted "waves" of depression that afflicted her. (Tr. 41). "I would be feeling okay, and then I would shoot right down in feeling sad, depressed, and I would stay home and not go out. I didn't feel good." (*Id.*). The last treatment she received for depression was from "1990 to 1995." (Tr. 48). Fatigue, which she originally attributed to depression, "was getting worse" in the 2000s "and I actually would occasionally fall asleep in the afternoon at my desk unintentionally." (Tr. 42). On occasion, she also struggled with memory problems. (Tr. 41). "Between the drugs and the fibromyalgia, I have problems grasping words, remembering people. I have a fog right now, so everything's haze around my eyes, and everything's kind of distant." (*Id.*). Among other things, these issues inhibited her ability to read and comprehend what she read. (Tr. 46).

In 2011 she had surgery on both hands for carpal tunnel syndrome, which improved the "constant shooting pain" in her hands; nevertheless, she still suffered "numbness in my fingertips" and a general lack of flexibility. (Tr. 42-43). She had to take rests when using a keyboard. She had been seeing a physical therapist for her back issues for injection treatments, and though "[i]t helped some for a short while," she eventually "fell on some stairs and fractured my foot, and by the time my foot was even better, it . . . had gone back to where it was." (Tr. 44). Her asthma remained "[s]omewhat controlled" so long as she used an inhaler. (Tr. 45). Her current doctor encouraged the use of a cane, but her "previous doctor" did not. (Tr. 46). She felt her back condition had gotten worse over time. (*Id.*).

ii.      **The VE's Testimony at the Administrative Hearings**

The VE first classified Plaintiff's past work as a skilled position "with an SVP of 8, and at the sedentary physical demand level performed up to the medium level per the testimony." (Tr. 50). The ALJ then posed her first hypothetical individual:

> I'd like you to assume an individual who's currently 61 years old and posses [sic] the same education background and work experience as Ms. Miller. Assume the individual is unable to stand and walk more than six hours in an eight-hour days; sitting would be unlimited, but there would be a need for a sit-stand option at least every 30 to 45 minutes. The individual could lift no more than 20 pounds occasionally and 20 pounds frequently, could only stoop, squat, climb, balance, crouch, crawl or kneel occasionally and would need a clean air environment free from concentrated levels of dust, fumes, chemicals, gases and other airborne irritants. Could such an individual perform the work you have described as Ms. Miller's past work?

(*Id.*). The VE indicated that such a person could perform Plaintiff's prior work. (*Id.*). The ALJ then added a twist for the second hypothetical: "assume the individual would be limited to standing and walking no more than two of eight hours and could only lift up to 10 pounds, would that affect the ability to perform the past work as classified?" (*Id.*). The VE again said that such a person could perform Plaintiff's past work. (Tr. 51). Further, the ALJ asked whether an inability "to perform extended telephone conversations, more than 10, 15 minutes at a time, would . . . affect the ability to perform the past work as classified?" (*Id.*).  The VE noted that "[t]he DOT doesn't specifically address that type of thing, but just from my knowledge, background and experience, I would say no, the individual would not be able to perform the job as the job requires extensive communication and a lot of that would be via telephone." (*Id.*).

10

The ALJ then asked "[i]f an individual was limited to a low-stress environment defined as no quick decision making and no quick judgment required on the job, would be unable to perform jobs that are fast paced, high production and frequent changes in task, expectations or locations. Would that affect the ability to perform the past work as classified?" (*Id.*). According to the VE, such a person remained similarly ill-equipped to perform Plaintiff's past work. (*Id.*).

The ALJ asked whether the need "to take unscheduled breaks at least once a day for a period of at least 20 to 30 minutes" would affect the ability to perform Plaintiff's past work, and the VE confirmed that such a limitation would preclude her past work. (Tr. 52).

### F.   Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).  Both  "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical

sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July

2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996). Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling

reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)     [D]aily activities;

     (ii)    The location, duration, frequency, and intensity of . . . pain;

     (iii)   Precipitating and aggravating factors;

     (iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

     (v)    Treatment, other than medication, . . . received for relief of . . . pain;

     (vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.    Analysis

Plaintiff raises two arguments in her Motion: (1) the ALJ should have found Plaintiff's tinnitus and SSCD to be severe impairments, (Doc. 10 at ID 766-71); and (2)

the ALJ should have given more weight to the opinion of Dr. Mariotti, Plaintiff's treating physician, (*Id.* at ID 771-74). I address each argument in turn.

### 1.   Findings Regarding Plaintiff's Tinnitus and Superior Semicircular Canal Dehiscence ("SSCD")

Plaintiff first argues that the ALJ committed remandable error in finding her tinnitus and SSCD to be non-severe impairments. (Doc. 10 at ID 766). As she correctly notes, "for a Step Two error to be harmless—and therefore not subject to reversal—the ALJ must have actually considered the cumulative effect of all of the claimant's impairments, severe and not severe, in assessing the claimant's RFC." (*Id.* at ID 769). In her view, remand is required because "the ALJ did not take into account Plaintiff's non-severe impairments in later steps of the disability determination, specifically, when evaluating Plaintiff's RFC." (*Id.* at ID 770).

Even a cursory reading of the ALJ's analysis undermines Plaintiff's argument on this ground. The ALJ expressly discussed Plaintiff's alleged tinnitus, SSCD, and hearing loss at Steps Two and Three of the analysis, and having found no limitation therefrom, declined to credit such conditions as limiting when answering the question whether Plaintiff could perform her prior work as a Vice President. *See* (Tr. 13-14) (Step 2: discussing Plaintiff's alleged hearing loss and objective evidence related to SSCD); (Tr. 15-16) (Step 3: explaining why Plaintiff did not meet "Listing 2.10, Hearing loss not treated with cochlear implantation"); (Tr. 17) (RFC determination: addressing Plaintiff's history of treatment for hearing loss, allegations of hearing loss, and ostensible ability to hear during the hearing). The ALJ's Step-Two findings as to Plaintiff's tinnitus, SSCD, and

16

hearing loss therefore constitute (at worst) harmless error. *Accord, e.g.*, *Franson v. Comm'r of Soc. Sec.*, 556 F. Supp. 2d 716, 730 (W.D. Mich. 2008) (where the ALJ proceeds to consider non-severe impairments throughout her analysis, "[i]t is well established that . . . the ALJ's failure to list additional impairments as severe at step two cannot provide a basis for reversing the Commissioner's decision" (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."))).

In any event, substantial evidence endorses the ALJ's Step-Two finding that Plaintiff's tinnitus and SSCD were not severe impairments. As an initial matter, the ALJ gave little weight to Plaintiff's averments—including those related to the severity of her hearing loss, (Tr. 20)—and Plaintiff does not challenge this finding, thereby conceding its validity.[1] *Accord, e.g.*, *Powers v. Comm'r of Soc. Sec.*, No. 13-10575, 2014 WL 861541,

---

[1] Had Plaintiff developed such an argument, it nevertheless would not have prevailed. As the ALJ noted, the "clinical findings do not support" her claims of limitations, and her "description of the severity of the pain and other limitations has been so extreme as to appear implausible." (Tr. 20). *E.g.*, (Tr. 244, 246, 344, 430, 434, 472, 476, 513, 536, 579, 582, 599) (absence of significant hearing loss); (Tr. 392, 449, 453, 490, 493, 497, 533, 540, 544, 566, 613, 616, 632, 636, 639, 643) (gait within normal limits and/or no need for an assistive device); (Tr. 19, 183-90, 392) (relative independence in activities of daily living). In addition, despite allegations of depression, crippling pain, and medication side-effects, she failed to convey these concerns to her medical providers and regularly showed little interest in remedying them. (Tr. 252, 430, 472, 580, 583, 674) (routine/conservative treatment); (Tr. 344, 450, 454, 494, 498, 545, 567, 617, 621) (signs of exaggeration); (Tr. 278-79, 690-91, 698) (mild objective evidence of back injury); (Tr. 344, 347, 431, 472, 576) (lack of interest in treatment for depression).

at *7 (E.D. Mich. Mar. 5, 2014) ("Plaintiff, however, does not challenge the ALJ's credibility finding, and therefore, she has waived this argument." (citing *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) (refusing to "formulate arguments on [the plaintiff's] behalf, or to undertake an open-ended review" where she "made little effort to develop" her challenge))). Moreover, the record showed that, notwithstanding her pleas to the contrary, Plaintiff's aural symptoms did not appear to inhibit her ability to communicate with others or otherwise concentrate, and medical providers treated them conservatively. *E.g.*, (Tr. 244, 246, 344, 430, 434, 472, 476, 513, 536, 579, 582, 599) (absence of significant hearing loss); (Tr. 189) (explaining treatment via hearing aids). Accordingly, substantial evidence bolsters the ALJ's Step-Two finding.

Because the ALJ's findings at Step Two are supported by substantial evidence, and because the ALJ proceeded to consider the impact of Plaintiff's non-severe impairments throughout the remainder of her opinion, the Court should discount Plaintiff's argument on this front.

### 2.    Weight Accorded Plaintiff's Treating Physician

Plaintiff next argues the ALJ "did not give good reasons as to why Dr. Mariotti's opinion be given only 'very limited weight.'" (Doc. 10 at ID 771). In her view, the opinion was "consistent and supportive of the University of Michigan specialists," and "the length, frequency, nature and extent of the treatment relationship" ought to have weighed in favor of significant, if not controlling, weight. (*Id.* at ID 772). In addition, "the fact that there is no opinion of record which rebuts the assessments of Dr. Mariotti that Plaintiff is unable to work and that she has severe tinnitus" should shield the opinion from skepticism: "if the

ALJ wanted to discredit the doctor's opinion, she was required to obtain other medical evidence regarding Plaintiff's RFC." (*Id.* at ID 773).[2]

Evaluating medical source statements requires considering factors such as the nature of the source's examining relationship with the client, 20 C.F.R. § 416.927(c)(1), the source's treatment relationship with the client, *id.* § (c)(2), the supportability of the source's opinion, *id.* § (c)(3), the consistency of the opinion with the record as a whole, *id.* § (c)(4), whether the source is a specialist opining on areas within her specialty, *id.* § (c)(5), as well as "any factors" the claimant or others "bring to [the Commissioner's] attention, or of which [the Commissioner] is aware, which tend to support or contradict the opinion," *id* § (c)(6). The ALJ "will always give good reasons. . . for the weight" given a "*treating* source's opinion." *Id* § (c)(2) (emphasis added). The ALJ, however, need not give 'good reasons' with respect to 'other sources'—rather, he "generally should explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006). There remains an important "distinction between what an adjudicator must consider and what the adjudicator must explain." *Id.*

---

[2] Plaintiff also takes issue with the ALJ's statement that Plaintiff has "subjective tinnitus," as if such a phrase was an implicit rejection of the objective medical evidence proving the existence of SSCD. (Doc. 10 at ID 773). This complaint is not well-taken. "Subjective tinnitus" is "the usual type of tinnitus, in which the sound cannot be heard by an examiner or measured by objective instruments." Elsevier, *Dorland's Illustrated Medical Dictionary* 1930 (32nd ed. 2012). Indeed, Plaintiff was diagnosed with "Tinnitus Subjective" by Dr. Bojrab. (Tr. 258, 263).

The ALJ accorded Dr. Mariotti's opinion "limited weight" because she relied heavily on Plaintiff's "subjective report of symptoms and limitations . . . and seemed to accept as true most, if not all, of what the claimant reported uncritically." (Tr. 19); *see* (Tr. 422-28) (preceding statements of limitation with "She relates," indicating the limitation was derived from Plaintiff's subjective statements rather than clinical or objective evidence of limitation). This constitutes a sound rationale where, as here, the ALJ rendered an adverse credibility determination. *E.g.*, *Remias v. Comm'r of Soc. Sec.*, 690 F. App'x 356, 357 (6th Cir. 2017) (finding reasonable the ALJ's decision to discount a medical opinion grounded on incredible subjective statements); *cf. Bell v. Barnhart*, 148 F. App'x 277, 285 (6th Cir. 2005) ("There is no indication that Dr. McFadden's opinion was supported by anything other than Bell's self-reports of his symptoms. Such reports alone cannot support a finding of impairment."). In addition, Dr. Mariotti alluded to a "psychological component" of Plaintiff's condition which, as the ALJ rightly noted, is unmoored speculation, as Plaintiff never received or sought mental-health treatment. (Tr. 19); *see* (Tr. 344, 347, 431, 472, 576) (displaying a lack of interest in seeking treatment for depression, despite suggestions from medical providers). These are good reasons for rejecting the treating physician's opinion, and the ALJ was not required to supplement the record simply because Plaintiff relied on a deficient medical-source opinion. *See, e.g.*, *Muscott v. Colvin*, No. CV 14-13890, 2015 WL 7248670, at *4 (E.D. Mich. Oct. 29, 2016) ("[A]fter the ALJ set forth good reasons for rejecting [the only medical opinion], the ALJ did not need to seek out another physician's opinion."), *R. & R. adopted sub nom. Muscott v. Comm'r of Soc. Sec.*, No. 14-13890, 2016 WL 386432 (E.D. Mich. Feb. 2, 2016). As discussed at

some length in the preceding section, the ALJ's cited medical evidence for her findings at each stage of her opinion. *See generally* (Tr. 12-20).

For these reasons, Plaintiff's argument on this ground must also fail.

### H.      Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, (Doc. 10), be **DENIED**, that the Commissioner's Motion, (Doc. 11), be **GRANTED**, and that this case be **AFFIRMED**.

### III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  April 19, 2018                                 S/ PATRICIA T. MORRIS
                                                      Patricia T. Morris
                                                      United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: April 19, 2018                                 By s/Kristen Castaneda
                                                      Case Manager